[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The defendants were defaulted for failure to appear in this action on June 18, 1990, and the case was heard on June 28, 1991 as a hearing in damages.
The defendant Townline Associates, Inc. was the owner of a building at 1177 Orange Avenue in West Haven. The defendant Walter T. Nichols is the president of Townline. The plaintiffs Anthony Villano and Gabriel Villano are stockholders and officers of Vitano, Inc. and personal guarantors of its debt. After discussions between the parties, the plaintiffs were induced to renew the lease on a restaurant operated by them at 1177 Orange Avenue, and signed a lease and returned it to the defendants for execution. Nichols made representations on several occasions that the lease had been signed by Townline and that a signed copy would be delivered to the plaintiffs. As a result, the plaintiffs made approximately $80,000 in renovations in 1988 with the understanding that they would get a 15 year lease for the restaurant.
On November 8, 1988 the plaintiffs were notified by the Building Department of the City of West Haven that structural problems existed with the building containing the restaurant. The defendants later represented to the plaintiffs that an agreement had been reached with officials of the City to correct the problems with the building to make them safe for use and occupancy. Between November 1988 and March 30, 1989 the defendants assured the plaintiffs that all necessary actions were being taken to correct the structural problems so that the restaurant could continue to operate under the lease. On March 29, 1989 the City of West Haven posted the premises as unsafe for occupancy, and the following day advised the plaintiffs that the restaurant could not be used because the building was structurally unsafe, and ordered the plaintiffs to cease all business operations. The plaintiffs relied upon the representations of the defendants in signing a new lease and in remodeling the restaurant facility.
This is a classic case of fraudulent misrepresentation: (1) false representations were made as statements of fact; (2) the statements were untrue and known to be untrue by the defendant; (3) the statements were made to induce the plaintiffs to act upon the statements; and (4) the plaintiffs acted by renewing the lease and remodeling the property under CT Page 6944 the belief that they had a 15 year lease, and sustained losses as a result of the misrepresentations. Miller v. Appleby,183 Conn. 51, 54, 55.
The plaintiffs are entitled to damages which resulted from the fraudulent misrepresentations. Anthony Villano and Gabriel Villano each had lost income from the business for April, May and June 1989 in the amount of $14,300 which they would not have incurred if they had known in advance that the restaurant would have to close at the Orange Avenue location. When the business was moved some of the equipment and improvements which were made based upon the expectation of a new 15 year lease had to be left behind. The improvements and equipment were worth $39,474.56.
The plaintiffs also claim damages under the Connecticut Unfair Trade Practices Act, 42-110g of the General Statutes. The leasing of commercial property or offering to lease it can be the subject of a CUTPA claim. Burkert v. Petrol Plus of Naugatuck, Inc., 216 Conn. 65, 85. Section 42-110b(a) C.G.S. provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." The conduct of the defendants in concealing problems with the building and inducing the plaintiff corporation to enter into a new lease and spend large sums of money for improvements, and fraudulent misrepresentations that went with it were deceptive acts and practices covered by the statute. The defendant's conduct also amounts to an unfair practice because: (1) the practice offends public policy and comes within the scope of some common law, statutory or other established concept of unfairness; (2) the conduct was immoral, unethical, oppressive or unscrupulous; (3) it caused substantial injury to the plaintiffs' business. A-G Foods, Inc. v. Pepperidge Farm, Inc., 216 Conn. 200, 215; McLaughlin Ford, Inc. v. Ford Motor Co., 192 Conn. 558, 567-68. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. Id., 569; Atlantic Ridgefield Co. v. Canaan Oil Co.,202 Conn. 234, 242. Such conduct causes substantial injury to other businessmen when the injury is substantial, not outweighed by any countervailing benefits that the practice produces and was an injury that the plaintiffs themselves could not have reasonably avoided. See A-G Foods, Inc. v. Pepperidge Farm, Inc., supra, 216.
Awarding punitive damages and attorney's fees under CUTPA is discretionary with the court. Gargano v. Heyman, 203 Conn. 616,622. Vitano, Inc. has been required to spend substantial amounts for attorney's fees in attempting to remedy the problems caused by the defendants' conduct, and $15,000 is awarded as attorney's CT Page 6945 fees.
Even though the defendant Nichols was acting as president of the defendant corporation, he is personally liable in addition to the corporation for his fraudulent representations and actions regardless of whether the corporate veil should have been pierced. Kilduff v. Adams, Inc., 219 Conn. 314, 331, 332.
Judgment shall enter against both defendants for Vitano, Inc. in the amount of $54,474.56, for Anthony Villano in the amount of $14,300 and for Gabriel Villano in the amount of $14,300.
Robert A. Fuller Judge